## Duey, Administrator of Stoner, *v.* Clemens.

### In Error.

A son who had taken part of his father's land at a valuation in the Orphans' Court, executed a conveyance of it, and a bond of indemnity against encumbrances "except the widow's third," to one, as whose property it was sold by the sheriff, to a second, who, reciting that the land was subject to interest on the widow's third (naming the exact sum) during her life, and the principal at her death, conveyed it to a third, who conveyed it to a fourth by a deed containing a similar recital. *Held*, that the son had reserved nothing in the land, and that his administrator was not entitled to recover any thing out of it at the widow's decease.

Error to the Court of Common Pleas of Dauphin county. Simon Duey, Administrator of Jacob Stoner, deceased, plaintiff in error, and plaintiff below, against Jacob Clemens.

It appeared from the record returned, that this was a case stated in the nature of a special verdict, for the opinion of the court, subject to a writ of error by either party, upon the following statement of facts:

John Stoner, of Dauphin county, died in the year 1815, leaving a widow and four children and real estate in the said county. That proceedings in partition were had in the Orphans' Court of Dauphin county, and the real estate of said decedent was divided into three parts, which were taken respectively by Jacob Stoner, John Stoner, and Henry Stoner, the sons of the said decedent, and adjudged to them respectively by the said court on the 31st day of October, 1815. Jacob Stoner, the intestate of plaintiff, was the oldest son, and took a tract containing one hundred and two acres and forty-seven perches, adjoining lands of J. Bachestoss and others, valued at $2232, and thereupon the said Jacob entered into a recognisance in the said court, conditioned " to pay unto the widow and other heirs of the said John Stoner, deceased, their several and respective shares in the valuation aforesaid." That afterwards, on the 28th day of February, 1820, during the life of the widow of the said John Stoner, deceased, the said Jacob Stoner and wife sold and made a deed for the said tract of land to Abraham Boyer, which deed was recorded on the next day after its date, and also gave a bond of indemnity with sureties of the same date to the said Abraham Boyer, reciting among other things the sale of said tract of land to said Abraham Boyer, and binding themselves to indemnify him, the said Abraham Boyer, against all claims to the said tract of land " *except the widow's third.*"

That afterwards the said land was sold by the sheriff of Dauphin county as the property of the said Abraham Boyer, and a deed duly

acknowledged for the same to Michael Killinger, on the 1st day of May, 1834.

That on the 31st day of March, 1837, the said Michael Killinger and wife sold and conveyed a part of the said land, containing fifty-five acres more or less, to John Waggoner; the deed containing the following recital, viz.: "under and subject to the payment of the *yearly interest* arising and accruing *on the sum of* $744 unto the widow Stoner, widow of Jacob Stoner, late of the same place, deceased, yearly and every year during her life, and immediately *after her death* the PRINCIPAL *sum of* $744 to the heirs and legal representatives of the said Jacob Stoner, deceased, according to the Orphans' Court." That on the 30th day of March, 1840, John Waggoner and wife sold the said tract of land to Mary McCreight, and on the 3d day of April, 1841, the said Mary McCreight sold and conveyed the said fifty-five acres of land to Jacob Clemens, the defendant in this action, by a deed of that date, which, after reciting all the prior deeds aforesaid, contains the following words: "under and subject to the *payment* of the *yearly interest* arising and accruing *on the sum of* $744, unto the *widow Stoner*, she being the widow of *John Stoner*, late of Hanover township, Dauphin county, deceased, which yearly interest is to be paid annually to said widow during her natural lifetime, and *immediately after her* DEATH *the* PRINCIPAL SUM OF SEVEN HUNDRED FORTY-FOUR DOLLARS to be paid to the heirs and legal representatives of the said John Stoner, deceased, according to the order of the Orphans' Court, reference to said deeds being had will more fully and at large appear." The owners of the said tract of land successively paid the interest on the said $744 to the widow of said John Stoner, deceased, during her life; and the said widow died on the     day of August, 1844. Jacob Stoner aforesaid died about the year 1830, and Simon Duey became his administrator. On the 3d day of April, 1817, Simon Lingle and wife, and John Stoner and Henry Stoner executed and delivered a release to Jacob Stoner, with this reservation, "saving and excepting their several and respective shares in the widow's dower or thirds at common law, in the lands aforesaid at the time of her decease."

If on the foregoing case Simon Duey, administrator of Jacob Stoner, deceased, is entitled to recover out of said tract of land, now owned by said Jacob Clemens, the defendant, judgment shall be given for $191 52, otherwise judgment to be given for the defendant.

The court below (Eldred, President) gave judgment for the defendant, and delivered the following opinion:

"When Jacob Stoner, the plaintiff's intestate, accepted the land in

1815, under the proceedings in the Orphans' Court and the decree of that court, he became the absolute owner of the fee-simple of the premises.

"He took the land, subject to the interest on the one-third of the valuation charged on it for the widow during her life, and to the payment to the other children their shares of the principal at her death. He had no lien on his own land for any portion of the money payable at the death of the widow. The lien, so far as it affects his share of the valuation money, was extinguished; it is regarded as paid by operation of law. Stecker v. Shimer, 5 Wharton; Riegle v. Serger, 2 P. R.

"The plaintiff's right to recover depends on the agreement of his intestate, Jacob Stoner, when he sold and conveyed the land to Abraham Boyer, on the 28th February, 1820. By this deed Jacob Stoner conveys the land in fee-simple with a general warranty to Abraham Boyer, without any reservation or exception other than subject to the purchase money due the commonwealth, and refers to the proceedings in the Orphans' Court.

"At the same time Jacob Stoner executes and delivers to Boyer a bond, with security in $2000, the condition of which is to indemnify and keep harmless the said Abraham Boyer from all persons claiming the land, (*except the widow's third*,) and more *especially* against all judgments and mortgages had and obtained against Jacob Stoner prior to that date.

"This deed and bond is the only evidence we have of the contract between Jacob Stoner and Abraham Boyer; they were executed and delivered in lifetime of the widow, who was entitled to the interest on the one-third of the valuation money. If the widow had died before Jacob Stoner, and before Abraham Boyer had parted with the land; what claim would Jacob Stoner have had on the land, or on Abraham Boyer under and in pursuance of this deed and bond? By these writings, constituting their agreement, Boyer was bound to pay the interest of the one-third of the valuation to the widow during her life, and at her death was bound to pay to the other heirs their interest and proportion of that fund; of this there can be no question. But was he bound to pay Jacob Stoner any portion of it? Jacob Stoner could unquestionably have made his agreement so as to have compelled him to do so, and the question is, did he provide for the payment of his own portion or share at the death of the widow? This question seems to be settled against the plaintiff in the case of Stecker v. Shimer, before referred to. In that case, which is very similar to the one now under consideration, John Stecker conveyed the land to Jacob Shimer, and *Shimer was to pay the interest of the sum charged upon the land*

*annually to the widow during her life, and the principal sum to the other heirs at her death.* The deed provided that Shimer should *take and hold the land, subject to the payment of their shares to the children and the widow of the valuation money.* Mr. Justice Rogers, in delivering the opinion of the court in that case, observes, that ' on the face of the proceedings in the Orphans' Court, it is very clear that John Stecker had no lien on his own land for any portion of the money payable at the death of the widow; as by the acceptance of the purpart and the decree of the court, he became the absolute owner in fee-simple of the premises. The lien, so far as it affects his share of the valuation money, was extinguished. And this would seem to have been the understanding of the original parties to the contract, for in the first deed from Stecker to Jacob Shimer, the reservation is made subject to the payment to the *other* children and representatives of the deceased intestate, plainly excluding himself from any benefit to be derived from any portion of the valuation money, which is made a lien on the premises. The word ' *other*' did not alter the construction. It would be a covenant to pay the portion of those children only whose shares were charged on the land, to the exclusion of the grantor.' In the present case Jacob Stoner, by his deed, conveys the land absolutely to Abraham Boyer, warranting against all claims whatever, and in his bond of the same date he stipulates to indemnify Boyer against all claims to the land ' *except the widow's third,*' and especially against all judgments and mortgages. The plaintiff relies on the words, ' *except the widow's third,*' to make out his claim to the money in dispute. That in this exception Abraham Boyer in substance stipulated and agreed to pay to Jacob Stoner, or to his representatives at the death of the widow, his proportion of the money set apart for her use during her life. I cannot agree that such is the case. The exception does not show that such was the *intention* of the parties. The words used in the bond are not so strong in support of this position contended for, as the words used in the deed from Stecker to Shimer, to wit: ' subject to the payment to the children and representatives of the deceased intestate,' to support the position that Shimer was to pay to Stecker, at the death of his mother, his proportion of the money charged on the land for his mother's use. In the present case it is presumed that Boyer knew that by Jacob Stoner's acceptance of the land at the appraisement in the Orphans' Court, it was charged with one-third of the valuation money, the interest of which was to be paid to the widow during her life, and at her death the children [other than Jacob] were entitled to their respective portions of that fund. That nothing was to be paid to Jacob, for he had no lien on the land, his share having been extin-

guished and paid by operation of law when he accepted the purpart at the appraisement, and that Boyer took the land only subject to the actual liens upon it, that is of the widow and heirs, excluding Jacob Stoner, for he had no lien on it. The deed and accompanying bond show that such was the understanding of the parties at the time; Jacob Stoner conveys all he could convey, the fee-simple in the land charged with the lien of the widow and other heirs. He could not convey it discharged of their lien, if he had felt disposed to do so. Abraham Boyer knew this, but there were judgments and mortgages to be provided against especially, and he required the indemnifying bond with security. These judgments and mortgages seem to have been the special object of the bond, for the words *except the widow's third* are interlined. But giving these words their full place in the bond, I cannot regard them as constituting a covenant on the part of Boyer to pay more than was actually a lien on the land. These words were properly introduced in the bond for another purpose; they protect Stoner against his general warranty in his deed, and without them he would have been liable to Boyer for the amount Boyer would be compelled to pay the widow during her life, and to the other heirs at her death. If then this question had arisen under the agreement between the parties after the death of the widow, and before Boyer had parted with the land, the plaintiff would not have been entitled to recover. If he could not recover, then it is difficult to see how his administrator can recover now.

"It appears from the case, that this land was afterwards sold by the sheriff, as the property of Boyer, to Michael Killinger. At what time this sale took place does not appear, nor is it material, if I am right in the position assumed, for Michael Killinger purchased subject to the actual liens on the land at the time, and if Jacob Stoner had no lien on it by his contract with Boyer, it is clear he had none at all, and therefore Killinger owes him nothing, even if he had notice at the sale of this bond of indemnity. I will here observe, that the only evidence we have that Killinger, or any of the subsequent purchasers, had any notice of this bond is, that it was found with the title paper. But, as I understand the agreement of the parties, it is immaterial whether they had notice or not.

"Jacob Stoner died in 1830. There is nothing in the case that shows that he was entitled to this portion of money now sought to be recovered at that time, or that his administrators would be entitled to it at any aftertime when his mother should die, and it appears she died in 1844. The counsel for the plaintiff rely much on the deeds from Michael Killinger to John Waggoner; from Waggoner to Mary

McCreight, and from her to the defendant; all in evidence and made a part of this case. These deeds do not relieve the plaintiff from the difficulties in the way of his recovery, and it is to be observed, they are all dated after the death of Jacob Stoner. It is of no moment that the defendant is bound to pay, if he is not bound to pay to the plaintiff in this suit, and I am of the opinion he is not. Judgment for the defendant."

On the removal of the record to this court, the following errors were assigned to the opinion of the court below:

1. The court erred in entering judgment in favour of defendant.

2. The court erred in rejecting, in their consideration of the case, *all the facts* agreed on, except those that occurred at the consummation of the agreement between Jacob Stoner and Abraham Boyer, without considering that Abraham Boyer not being a party to the suit, many other facts which would have been evidence in a suit against Abraham Boyer could not be received as evidence in a suit against Jacob Clemens; but that the admissions of Jacob Clemens were entitled to their legitimate consideration, as they tended to show the true state of the agreement between Jacob Stoner and Abraham Boyer, brought to the knowledge of defendant at the time he purchased.

*Hamilton Alricks*, for the plaintiff in error.

Jacob Stoner having accepted a part of the real estate of John Stoner, his deceased father, at the valuation, acquired a fee-simple in the land, subject to the payment of the shares of his brothers and sister in the two-thirds of the valuation money immediately; the payment of the interest to the widow on the remaining third, during her life annually, and the payment of the shares of his brothers and sister in that third at her death. In 1817 his brothers and sister executed a release for their interest in the two-thirds. Being then the sole owner of the land, subject to the interest already mentioned in one-third of the valuation money, he had the right and power to sell this land discharged of all liens, except that of the widow and of his brothers and sister at the widow's death; or to sell it charged with the payment of any sum of money, secured to himself or another, and to become due at any future day.

On the 28th of February, 1820, he sold the land to Abraham Boyer, subject, as is abundantly evident from the case stated, to the payment of the entire third to himself and the other heirs of his father, after the death of the widow. It is true, that the deed executed by Jacob Stoner and wife to Abraham Boyer, passing their title to the land, contained no reservation; but there was a bond of indem-

nity given by Jacob Stoner to Abraham Boyer at the same time, which showed, that the title to the property was to pass free of all encumbrances, except the *widow's third*, language as susceptible of interpretation as any that could be used.    In Kelly *v.* Thompson, 7 Watts, 401, deed and bond but one instrument in law.    Whilst it may be admitted, that Jacob Stoner's representative could acquire no greater interest in the purchase money due on the land now owned by the defendant, than Jacob Stoner reserved at the time of his sale to Abraham Boyer; it certainly is easy to comprehend and understand the intent and import of the original agreement between Stoner and Boyer, by referring to subsequent agreements of the parties, in relation to buying and selling this same property.    The plaintiff proved by the deeds, under which the defendant claims title to the lands, that Abraham Boyer originally purchased the property charged with the payment of the third at the death of the widow of John Stoner; in fact, Jacob Clemens purchased the property subject to that charge, and thus made the property responsible in his hands for the same.    If Boyer did not purchase the property, originally charged with the payment of the third on the decease of the widow of John Stoner, it is impossible to account for the reservations having been introduced into so many deeds.

The sheriff's sale of the land, whilst the title was in Boyer to Killinger, was a judicial sale.    Killinger had notice; and under the authority of the case of Medler *v.* Aulenbach, 2 Penna. Rep. 355, and of Ince *v.* Snively, 4 Watts, 396, the interest of the widow and the heirs of John Stoner, deceased, was not divested by this sale. Killinger knew that he had purchased the land, subject to the payment of the third at the death of the widow of John Stoner, deceased; and his knowledge is conclusively proved by his deed to John Waggoner, in which the land sold is expressly 'charged, or made subject to the payment of this third on the decease of the widow of Stoner.    All the parties comprehended and kept in view the agreement between Jacob Stoner and Abraham Boyer.    The manner in which the reservation was made does not affect its validity.    It was the blunder of the scrivener, which was rectified in the deed to Jacob Clemens, the defendant.    Jacob Clemens then is bound to pay the principal sum charged upon the land, which is to be distributed *as proceeds of the land*, not to the heirs of John Stoner, other than Jacob, but alike to all the heirs.    The principle settled in Riegel *v.* Sieger, 2 Penna. Rep. 340, is not applicable here.    That was the case of a judicial sale.    The defendant's interest in the property was bound by the judgment, and the sheriff had to sell his entire interest; and neither

the sheriff nor the defendant could lawfully reserve any thing to the defendant, either in the land or the price of it.

But in Pidcock *v.* Bye, 3 Rawle, 183, which was a private sale, we have the point expressly decided. Clemens having purchased the land, subject to the payment of the one-third at the death of the widow of John Stoner, that charge would amount, under the circumstances, to a promise on his part, which could be enforced in an action of assumpsit. Van Order *v.* Van Order, 10 Johns. Rep. 30; Goodwin *v.* Gilbert, 10 Mass. Rep. 510. He also cited Craft *v.* Webster, 4 Rawle, 257, to show that they would have a remedy against the land.

*McCormick*, for defendant in error, after commenting upon the words of the reservation in the deeds and the manner in which it was made, argued, that the question in this case had been settled in Riegel *v.* Sieger, 2 Penn. Rep. 340, where it was decided, that a son, who takes land at a valuation in the Orphans' Court, and enters into a recognisance to pay the widow's third, and the land is afterwards sold by the sheriff, is not entitled to receive any part of the widow's third after her death. And again, in Keen *v.* Ridgway, 16 S. & R., 60, and in Hoffer *v.* Wightman, 5 Watts, 205, it was held, that when an heir takes land at a valuation in the Orphans' Court, his share of the estate remains unchanged; and in the case of a husband taking land in right of his wife, a recognisance given to the other heirs does not bind the share of the wife. He also adverted to the distinction between judicial and private sales.

*Herman Alricks*, in reply. The deed of Jacob Stoner and bond of indemnity are to be taken together. The bond accompanied the title papers: the bond says, *except the widow's third.* This is the *third* referred to, in the twenty-second section of the act of 1794, the *one-third* of the valuation money to be paid by the child taking the land, or his *assigns*, at the widow's decease. Clemens, the owner of the land, was not ignorant of the import of the term *widow's third*. An interpretation is put upon it in his deed, to wit, that he was to pay the widow annually the interest of $744, and at her decease to pay that sum to the heirs of John Stoner, deceased. Jacob was one of those heirs, and his part of the third was a debt *debitum in presenti, solvendum in futuro.* In Stecker *v.* Shimer, 5 Whart. 452, there was no reservation whatever in the title papers, no notice to the purchaser.

A vendor of land may charge a portion of the purchase money on the land in his deed, Craft *v.* Webster, 4 R. 242. Clemens had

L 2

actual notice of this charge on his land; he contracted to pay it; the *intention* of the parties must govern as well in contracts as in wills.

There is a difference between *private* and *judicial* sales. Riegel *v.* Sieger was the case of a judicial sale: we do not object to the doctrine there laid down. As the sheriff has no power to make any reservation, he must of course sell the entire interest of the debtor. The case, however, of Fritz *v.* Heller, 2 W. & S. 400, has in some degree shaken the case of Riegel *v.* Sieger, for it was the case of a *judicial* sale; and yet this court required the purchaser to pay the entire amount due at the decease of the widow, including the share of the son who took the land at the valuation, and as whose land it was levied and sold.

In no case of a private sale has a vendee been discharged from the payment of any part of the money reserved by the vendor to be paid in future, where the vendee and his assigns had notice of the charge. The title-papers here show distinctly a reservation of $744, as *so much of the purchase money*, which remained a charge upon the land. Clemens has paid but three-fourths of it; justice and equity require that he should pay the residue. Pidcock *v.* Bye and Fritz *v.* Heller pointedly sustain this position.

PER CURIAM. We affirm this judgment for the reasons given by the judge, who ruled the point below.

Judgment affirmed.

---

## McGEE *v.* FESSLER.

The act of the 21st of March, 1772, which gives a summary remedy to a landlord, only applies to leases on which a certain rent is clearly and distinctly reserved; and not to cases where the rent reserved is so uncertain as to require the intervention of a jury to render it certain.

All the facts necessary to give jurisdiction should be set out in the proceedings: and if it do not appear on the record that the lease or demise was "*under certain rents*," or "a certain yearly," or "other rent," the proceedings of the justices and inquest will be set aside.

The court may, in special cases, after a writ of possession, refuse a writ of restitution.

ON the 16th day of April, 1845, two justices of the peace of Dauphin county issued their precept, reciting that Rody McGee, assignee of Rebecca H. Duncan, of Halifax township, in said county, on the day of         , 18  , was quietly and peaceably possessed of a certain house and lot of ground, with the appurtenances, in said township; and being so thereof possessed, the said Rebecca H. Duncan, on the same day and year, demised the said premises to a certain